# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JAMES EHRMAN, the Receiver for the Assets of the Receivership Defendants and Relief Defendants** <br> 2344 Canal Road, Suite 401 <br> Cleveland, Ohio 44113-2535 <br><br> **Plaintiff,** <br><br> v. <br><br> **QUEST INNOVATION LLC** <br> 3593 Eagles Nest Circle NW <br> Uniontown, Ohio  44685 <br><br> and <br><br> **AMY M. ROLLYSON-HIXON** <br> 3593 Eagles Nest Circle NW <br> Uniontown, Ohio  44685 <br><br> **Defendants.** | Case No. <br><br> Judge |

## COMPLAINT TO AVOID AND TO RECOVER TRANSFERRED PROPERTY OR THE VALUE OF TRANSFERRED PROPERTY

Plaintiff James Ehrman (the "**Receiver**"), as receiver for the assets of Thomas Abdallah a/k/a Thomas Abraham ("**Abdallah**"), Kenneth Grant ("**Grant**"), KGTA Petroleum, Ltd. ("**KGTA**"), Mark  George ("**George**"), Jeffrey Gainer ("**Gainer**"), and Jerry Cicolani, Jr. ("**Cicolani**") individually, and collectively with Abdallah, Grant, KGTA, George, and Gainer (the "**Receivership Defendants**"),

and of Nancy Gainer ("**N. Gainer**"), NATG, LLC ("**NATG**"), Kelly Hood ("**Hood**"), and Turnbury Consulting, LLC ("**Turnbury**") individually, and collectively with N. Gainer, NATG, Hood, and Turnbury (the "**Relief Defendants**"), for his complaint says as follows:

## BACKGROUND FOR THIS PROCEEDING: THE FRAUDULENT PONZI SCHEME, THE CRIMINAL PROCEEDINGS, AND THE RECEIVER

1. On May 29, 2014, the United States Securities and Exchange Commission ("**SEC**") filed a complaint (the "**SEC Complaint**") in the United States District Court for the Northern District of Ohio (the "**District Court**") which commenced Case No. 14-cv-1155-SO, *United States Securities and Exchange Commission v. Thomas Abdallah, et al.* (the "**SEC Case**"). The SEC Case centered on a fraudulent scheme (the "**KGTA Ponzi Scheme**") perpetrated by Abdallah and Grant. The Complaint in the SEC Case alleged, *inter alia*,—

    a. Abdallah and Grant marketed KGTA to investors as a petroleum company that earns profits by buying and reselling crude oil and refined fuel products. They told investors that they had relationships with *bona fide* third party purchasers and that they would use investor funds to buy fuel at a discount that would then be sold at a substantial profit to those *bona fide* purchasers. Grant and Abdallah helped convince prospective investors to buy KGTA promissory notes ("**KGTA Notes**") by promising an important safeguard: the investment funds and the returns would flow through an escrow account monitored by an attorney, George, who acted as the escrow agent.

  b. Between October 8, 2012 and February 2014, KGTA raised at least $20.73 million from investors.

  c. The KGTA oil business was a sham and the escrow safeguard was a mirage. In reality, Grant and Abdallah operated KGTA as a Ponzi scheme and George never followed the promised escrow procedures. The purchase orders did not exist, KGTA did not sell fuel or oil to its "major buyers," and KGTA did not generate revenue through the purchase and resale of oil products. Investor funds were not held in escrow pending legitimate purchase orders. Instead, George distributed investor cash directly to KGTA. KGTA used some of the funds raised from new investors to pay fake "returns" to old investors.

  d. Any payment to an investor constituted an intentional misrepresentation of fact regarding the underlying KGTA Note and was an integral and essential part of the fraud. The payments were necessary to validate the impression to investors that KGTA was a legitimate business that earned profits from its operations, were made to avoid detection of the fraud, to retain existing investors, and to lure new investors into the KGTA Ponzi Scheme. Some investors were paid "finder's fees" for bringing new investors into the KGTA Ponzi Scheme.

  e. In most instances, Grant and Abdallah offered and sold the fraudulent KGTA Notes to prospective investors through Gainer and Cicolani – two registered representatives with a Cleveland-based broker-dealer. Gainer and Cicolani found investors for KGTA, set up meetings with Grant and Abdallah,

relayed information about KGTA to prospective investors, and obtained investor signatures on the agreements that memorialized the investment.

  f. Gainer and Cicolani reaped massive fees by selling the bogus, unregistered KGTA Notes to investors. They funneled their fees through NATG (owned by Gainer's wife, N. Gainer) and Turnbury (owned by Hood).

  g. The funds deposited from new investors that were not siphoned off to pay Grant, Abdallah, Gainer and Cicolani were used to pay for earlier investors; therefore, KGTA never had sufficient money to pay investors on account of their new investments. KGTA stayed afloat as long as it did only by using the principal invested by some investors to pay other investors.

  2. Criminal informations were filed against each of Grant, Abdallah, George, Gainer, Cicolani, and Hood (collectively, the "**Criminal Defendants**"). Each of the Criminal Defendants entered a plea of "guilty" and, on October 19, 2016, each of the Criminal Defendants was found guilty of the crime(s) set out in the following table, sentenced to the prison term indicated, and ordered to pay restitution in the amount indicated.

| Name | Found Guilty of | Prison Term | Restitution |
|---|---|---|---|
| Grant | Conspiracy to Commit Wire Fraud and Securities Fraud and Money Laundering | 92 months | $17,077,571.44 |
| Abdallah | Conspiracy to Commit Wire Fraud and Securities Fraud and Money Laundering | 82 months | $17,077,571.44 |
| George | Conspiracy to Commit Wire Fraud and Securities Fraud | 21 months | $17,077,571.44 |

| Cicolani | Sale of Unregistered Securities and Structuring Transactions to Evade Reporting Requirements | 57 months | $7,203,400.00 |
| Gainer | Sale of Unregistered Securities | 52 months | $7,000,718.00 |
| Hood | Structuring Transactions to Evade Reporting Requirements | 3 years of probation | $0.00 |

## THE RECEIVER: APPOINTMENT AND STANDING

3. On August 8, 2014, the SEC moved the District Court for the appointment of a receiver in the SEC Case. (SEC Case Docket no. 72.)

4. On December 3, 2014, the District Court entered an order [SEC Case Docket no. 119] (the "**Receiver Order**") appointing James Ehrman "as receiver . . . for the assets of the Receivership Defendants and [the] Relief Defendants". (Receiver Order at ¶ 2.)

5. The Receiver is charged, *inter alia*, with taking custody and control of the assets of the Receivership Defendants and of the Relief Defendants. (Receiver Order at ¶ 7.) The Receiver is in the process of marshalling those assets. However, such assets will not be sufficient to reimburse the people who thought they were investing in KGTA Notes. Consequently, the Receiver must use his authority to pursue recovery from (a) KGTA investors who received fictitious profits to the detriment of other defrauded customers whose money was consumed by the KGTA Ponzi Scheme and (b) people who received transfers from KGTA, NATG or Turnbury[1] but did not give value for said transfers. Absent this and other recovery

---

[1] Neither NATG nor Turnbury conducted any business. All funds received by NATG or Turnbury came directly from KGTA.

5

actions, the Receiver will be unable to satisfy the totality of the claims of all of the KGTA investors.

6. Pursuant to the Receiver Order, the Receiver has the general power "[t]o bring such legal actions, based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver[.]" (Receiver Order at ¶ 7.I.)

7. The Receiver is also "authorized, empowered and directed . . . to institute such actions and legal proceedings, for the benefit of and on behalf of the Receivership Estate." (Receiver Order at ¶ 43.)

8. The instant action is brought by the Receiver as part of his continuing duty "to sue for and collect, recover, receive and take into possession from third parties all Receivership Property" (Receiver Order at ¶ 7.B), pursuant to which he may "seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order." (Receiver Order at ¶ 43.)

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action because this action is ancillary to the SEC Case and the appointment of the Receiver by this Court. 28 U.S.C. § 1367(a).

10. This Court has personal jurisdiction over the defendant(s) in this action pursuant to 28 U.S.C. §§ 1692 and 754.

11. Venue for this matter is proper in this Court under 28 U.S.C. §§ 1391 and 754.

## NATURE OF THIS PROCEEDING

12. This action is brought pursuant to the Ohio Uniform Fraudulent Transfer Act (Ohio Revised Code Chapter 1336) and other applicable law to avoid the transfers specifically identified below and to recover the value of the transfers so that the value of the transfers can be equitably distributed among all of the victims of the KGTA Ponzi Scheme.

## GENERAL ALLEGATIONS

13. At all times relevant hereto, the sum of KGTA's debts were greater than all of KGTA's assets at a fair valuation. *See* O.R.C. § 1336.02(A)(1).

14. At all times relevant hereto, KGTA was generally not paying its debts as they became due. *See* O.R.C. § 1336.02(A)(2).

15. Because the KGTA Ponzi Scheme never had sufficient assets to pay off all of its obligations to its investors, every transfer of any asset by KGTA to any other person was made with actual intent to hinder, delay, or defraud creditors of KGTA. *See* O.R.C. § 1336.04(A)(1).

16. Because the KGTA Ponzi Scheme never had sufficient assets to pay off all of its obligations to its investors, at the time of each and every transfer of any asset by KGTA to any other person, KGTA was engaged in a business for which KGTA's remaining assets were unreasonably small in relation to its business. *See* O.R.C. § 1336.04(A)(2)(a).

17. Because the KGTA Ponzi Scheme never had sufficient assets to pay off all of its obligations to its investors, at the time of each and every transfer of any asset by KGTA to any other person, KGTA intended to incur, or believed or reasonably should have believed that KGTA would incur, debts beyond KGTA's ability to pay as they became due. *See* O.R.C. § 1336.04(A)(2)(b).

## THE DEFENDANTS

18. Quest Innovation LLC was a single-member limited liability company formed pursuant to Ohio law in February, 2011, by Amy M. Rollyson, now known as Amy M. Rollyson-Hixon. Rollyson terminated the company effective December 31, 2013. (Quest Innovation LLC and Rollyson-Hixon are referred to hereafter as the "**Defendants**.")

19. Amy M. Rollyson, now known as Amy M. Rollyson-Hixon, is a natural person, a citizen of the United States, and a resident of Stark County, Ohio.

## THE TRANSFERS

20. According to the records of KGTA, KGTA made various transfers (collectively, the "**Transfers**"), to the Defendants totaling at least $352,845.00.

21. The Transfers are described in detail in the attached Exhibit A and show, for each Transfer, the date of the Transfer, the form of the Transfer, and the amount of the Transfer.

22. The Transfers were made to or for the benefit of the Defendants.

23. The Defendants gave nothing of value to KGTA, either before or after receiving any of the Transfers, in exchange of the Transfer. *See* O.R.C. § 1336.03 and § 1336.05.

24. The Receiver's investigation is ongoing. During the course of this proceeding, the Receiver may learn, through discovery or otherwise, of additional transfers made to the Defendants by one or more of the Receivership Defendants or the Relief Defendants and that are avoidable. It is the Receiver's intention to avoid and recover all transfers made by any Receivership Defendant or Relief Defendant of any interest in property to or for the benefit of the Defendants. To that end, the Receiver reserves the right to supplement the information contained in this complaint regarding the Transfers and any additional transfers discovered during the time that this proceeding is pending.

25. To the extent that any of the recovery counts that follow are inconsistent with each other, they are to be treated as being pled in the alternative.

## COUNT I
### Avoidance of Fraudulent Transfer – O.R.C. § 1336.07(A)

26. The Receiver incorporates by reference all of the allegations contained in all the preceding paragraphs as if fully rewritten herein.

27. The Receiver is entitled to avoid each of the Transfers pursuant to O.R.C. § 1336.07(A)(1).

## COUNT II
### Judgment for the Value of Avoided Transfers – O.R.C. § 1336.08(B)(1)

28.     The Receiver incorporates by reference all of the allegations contained in all the preceding paragraphs as if fully rewritten herein.

29.     The Defendants were the first transferees of the Transfers or the persons for whose benefit the Transfers were made.

30.     Pursuant to O.R.C. § 1336.08(B)(1)(a), the Receiver is entitled to a judgment against the Defendants for the value of the Transfers.

## COUNT III
### Judgment Imposing a Constructive Trust

31.     The Receiver incorporates by reference all of the allegations contained in all the preceding paragraphs as if fully rewritten herein.

32.     The Defendants were the recipients of monies wrongfully and fraudulently obtained by KGTA from people who bought KGTA Notes thereby diminishing the amounts available to pay creditors of KGTA.

33.     In equity, a constructive trust should be impressed upon the assets acquired by the Defendants with the monies transferred from KGTA to the Defendants. *See* O.R.C. § 1336.07(A)(3)(c) and § 1336.10.

WHEREFORE, the Receiver prays that this Court enter judgment:

i. avoiding all of the Transfers pursuant to O.R.C. § 1336.07(A);

ii. in favor of the Receiver and against the Defendants in the amount of $352,845.00, pursuant to O.R.C. § 1336.08(B)(1);

iii. imposing a constructive trust in favor of the Receiver over all monies and assets obtained with the monies that the Defendants received from KGTA;

iv. for post-judgment interest as allowed by Ohio law;

v. for costs of this action including the Receiver's reasonable attorney's fees; and

vi. granting such other and further relief as the Court deems just and equitable.

Dated: November 30, 2016    x *John C. Fickes*

Mary K. Whitmer (0018213)
Email: mkw@WEadvocate.net
John C. Fickes (0018230)
Email: jfickes@bmblaw.com

WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio 44113-2535
Telephone: 216-771-5056

*Attorneys for James Ehrman, Receiver*